No. 13-1376

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

**UNITED STATES OF AMERICA,**
PLAINTIFF-APPELLEE,

V.

MICHAEL DEAN SPAULDING,
DEFENDANT-APPELLANT.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE JOHN L. KANE
SENIOR U.S. DISTRICT COURT JUDGE
D.C. NO. 12-CR-00223-JLK

———————————————

**ANSWER BRIEF OF THE UNITED STATES**

———————————————

JOHN F. WALSH                          STEPHANIE N. GADDY
United States Attorney          Special Assistant U.S. Attorney
                                                    District of Colorado
                                              1225 17th Street, Suite 700
                                                     Denver, CO 80202
                                            Telephone: (303) 454-0100

Attorneys for Plaintiff-Appellee

ORAL ARGUMENT IS NOT REQUESTED
April 16, 2014

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. III

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF JURISDICTION ......................................................... 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE AND FACTS ............................................. 1

    A.  Spaulding delivers methamphetamine to
undercover agents. ........................................................ 1

    B.  Spaulding withdraws from his first guilty
plea after sentencing. .................................................... 2

    C.  The court rejects the parties' second plea
agreement. ..................................................................... 5

    D.  The parties try again, to no avail. ............................. 7

    E.  Spaulding admits his guilt during a bench
trial and is sentenced to 137 months. ........................ 8

SUMMARY OF ARGUMENT ................................................................. 9

ARGUMENT ................................................................................... 10

   I.  The district court did not abuse its discretion
when it rejected the second plea agreement. ................. 10

    A.  Preservation and Standard of Review ..................... 10

    B.  Although the government disagrees with the
district court's decision to reject the second
plea agreement, the record does not support
a finding of abuse of discretion. ............................... 11

II.  The district court abused its discretion in
     imposing Spaulding's sentence. ....................................15

     A.  The Issue on Appeal.................................................15

     B.  Preservation and Standard of Review ...................16

     C.  Spaulding's sentence is procedurally
         unreasonable because the district court did
         not determine the effect of the § 5K1.1
         motion prior to imposing a non-Guideline
         sentence. ..................................................................17

CONCLUSION ........................................................................22

CERTIFICATE OF SERVICE...................................................23

CERTIFICATE OF DIGITAL SUBMISSION ..........................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Gall v. United States,*
    552 U.S. 38 (2007) ............................................................................ 18

*In re Morgan,*
    506 F.3d 705 (9th Cir. 2007) .......................................................... 13

*Rita v. United States,*
    551 U.S. 338 (2007) .......................................................................... 18

*United States v. A.B.,*
    529 F.3d 1275 (10th Cir. 2008) ...................................................... 18

*United States v. Alapizco-Valenzuela,*
    546 F.3d 1208 (10th Cir. 2008) ................................................ 18, 20

*United States v. Ammimdown,*
    497 F.2d 615 (D.C. Cir. 1973) ........................................................ 13

*United States v. Bean,*
    564 F.2d 700 (5th Cir. 1977) .......................................................... 13

*United States v. Calzada-Maravillas,*
    443 F.3d 1301 (10th Cir.2006) ....................................................... 19

*United States v. Carrigan,*
    778 F.2d 1454 (10th Cir. 1985) ................................... 10, 11, 13, 15

*United States v. Corber,*
    596 F.3d 763 (10th Cir. 2010) ........................................... 19, 20, 22

*United States v. Doe,*
    398 F.3d 1254 (10th Cir. 2005) ...................................................... 20

*United States v. Huckins,*
    529 F.3d 1312 (10th Cir. 2008) ................................................. 17, 21

*United States v. Martinez-Barragan,*
    545 F.3d 894 (10th Cir. 2008) ......................................................... 18

*United States v. McBride,*
    434 F.3d 470 (6th Cir.2006) ............................................................ 19

*United States v. Miller,*
    722 F.2d 562 (9th Cir. 1983) ..................................................... 11, 14

*United States v. Ollson,*
    413 F.3d 1119 (10th Cir. 2005) ....................................................... 20

*United States v. Ressam,*
    679 F.3d 1069 (9th Cir. 2012) .................................................... 20, 21

*United States v. Robertson,*
    45 F.3d 1423 (10th Cir. 1995) ....................................... 10, 11, 13, 14

*United States v. Robertson,*
    568 F.3d 1203 (10th Cir. 2009) ................................................. 16, 18

*United States v. Smart,*
    518 F.3d 800 (10th Cir. 2008) ................................................... 17, 21

*United States  v. Smith,*
    417 F.3d 483 (5th Cir. 2005) ...................................................... 13-14

## FEDERAL STATUTES, RULES, AND GUIDELINES

18 U.S.C. § 3231 ................................................................................ 1

18 U.S.C. §3553(a)(2) ................................................................... 18, 20

18 U.S.C. § 3742(a) ......................................................................... 1

21 U.S.C. §§ 843(b) and (d)(1) .............................................................. 5, 7

28 U.S.C. § 1291.................................................................................... 1

Fed. R. Crim. P. 11 ......................................................................... *passim*

USSG § 3E1.1 ..................................................................................... 3, 4

USSG § 5K1.1 ................................................................................ *passim*

## STATEMENT OF RELATED CASES

The government is not aware of any prior or related appeals in this matter.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. The district court entered final judgment on September 3, 2013, ROA I at 209, and Spaulding filed a timely notice of appeal on September 9, 2013. *Id.* at 219. This Court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.    Did the district court abuse its discretion when it rejected the second plea agreement?

II.   Did the district court abuse its discretion when it failed to determine the Guideline effect of the government's § 5K1.1 motion before varying from the Guidelines?

## STATEMENT OF THE CASE AND FACTS

### A.    Spaulding delivers methamphetamine to undercover agents.

Robert Blankenship agreed to provide an undercover agent with 1½ ounces of methamphetamine. ROA I at 44. On the scheduled date, however, Blankenship never appeared. He later called the undercover agent and explained that he did not have a ride to the agreed upon

1

location.  *Id*.  Blankenship and the undercover agent eventually agreed
upon a new date and location for the transaction.  *Id*. at 44-45.  On that
day, two agents arrived at a liquor store parking lot and saw
Blankenship walking nearby.  *Id*.  Over the phone, Blankenship told the
agents that his "courier" would deliver the drugs.  *Id*. at 45.

A short time later, Michael Spaulding arrived in a truck, which he
parked near the agents' vehicle.  *Id*.  Spaulding gave an agent 55 grams
of methamphetamine in return for $2,800.  *Id*.  Later that evening,
Blankenship called the agent and said that he had two additional
ounces of methamphetamine available for sale.  *Id*.

Thereafter, Spaulding, Blankenship, and a third codefendant,
Andrew Aldridge, were arrested and indicted.  ROA I at 14-15.
Spaulding was charged with conspiracy to distribute methamphetamine
("conspiracy count"), and distribution of methamphetamine
("distribution count").  *Id*.

## B. Spaulding withdraws from his first guilty plea after sentencing.

Over the course of the proceedings, the government and Spaulding
entered into three separate plea agreements.  The first was accepted by
the district court, but Spaulding was permitted to withdraw his guilty

plea after sentencing.  Thereafter, the parties entered into two additional plea agreements, both of which were rejected by the district court.

Initially, Spaulding agreed to plead guilty to the distribution count.  ROA I at 39.  He also agreed to cooperate with the government in the investigation and prosecution of others, including Blankenship. *Id.* at 40-41.  In exchange, the government agreed to request an adjustment for acceptance of responsibility and a downward departure for substantial assistance.  *Id.*

In keeping with its agreement, the government moved for a three-level downward adjustment, pursuant to U.S.S.G. §3E1.1(a) and (b), based on Spaulding's acceptance of responsibility.  The government also requested a downward departure, pursuant to U.S.S.G. § 5K1.1, for substantial assistance.  *Id.* at 61, 65.  In its § 5K1.1 motion, the government recommended a sentencing range of 77 to 96 months.  *Id.* at 61.  Spaulding filed his own motion for a downward variance and requested a 60-month sentence.  ROA I at 56.

At the first sentencing hearing, the district court denied the government's motion for acceptance of responsibility, explaining its

belief that U.S.S.G. § 3E1.1 requires a criminal defendant to do something more than "enter[] a plea of guilty and permit[] the Government to avoid preparing for trial." ROA III at 38. The court then granted the government's substantial assistance motion. *Id*. at 41. Although the court stated that it had considered the government's recommendation, it gave no indication of how it valued Spaulding's assistance. *Id*.

After the parties presented arguments regarding the appropriate sentence, the court concluded that it was "going to follow the guidelines," stating that it found "no reason to depart from the guideline range." *Id*. at 48-49. The court then sentenced Spaulding to 137-months imprisonment. *Id*. at 49.

The next day, Spaulding filed a motion to correct his sentence pursuant to Federal Rule of Criminal Procedure 35(a) or, in the alterative, to withdraw his plea pursuant to Federal Rule of Criminal Procedure 11(d). ROA I at 70. Despite the fact that a defendant may not withdraw a guilty plea after he has been sentenced, Fed. R. Crim. P.

11(e), the court granted Spaulding's motion to withdraw his guilty plea.[1]  *Id*. at 77.

### C.  The court rejects the parties' second plea agreement.

The government and Spaulding then entered into a new plea agreement.  ROA I at 96.  In it, Spaulding agreed to waive indictment and plead guilty to two counts of unlawfully using a communication facility in violation of 21 U.S.C. §§ 843(b) and (d)(1) ("telephone counts").  *Id*.  In exchange, the government agreed to dismiss the conspiracy and distribution counts.  *Id*.

At the change of plea hearing, the district court and counsel discussed the justifications for the plea agreement.  *See generally* ROA IV at 4-29.  Both the government and defense counsel urged the district court to accept the plea agreement.  *Id*. at 6-12, 13-14.  They noted that Spaulding and Aldridge had engaged in similar conduct and had similar criminal records, and yet Aldridge had been granted a downward variance and sentenced to 60-months imprisonment.  ROA IV at 6-9; *see also* ROA II at 95.

---

[1] The district court granted Spaulding's motion before the government could submit its response opposing the motion.  *See* ROA IV at 43.

The prosecutor acknowledged Spaulding's extensive criminal history, but she noted that the longest sentence Spaulding had then served was two years and that most of his criminal behavior had been driven by drug addiction. ROA IV at 10-12. She stated that, in the government's view, an eight-year sentence would be an appropriate step-up and deterrent while providing Spaulding with credit for his substantial assistance. *Id.*

The court disagreed. After comparing plea bargaining to a "Turkish Bazaar," the court stated its belief that the second plea agreement was "an effort by the prosecution, with the cooperation of the defense, to tie [the] Court down to something that interfere[d] with its responsibility to formulate a just sentence." *Id.* at 14. The court acknowledged that it must be wary of second-guessing prosecutorial discretion, but it concluded that the second plea agreement was a "hybrid," rather than a charge bargain. *Id.* at 24. Ultimately, the court ruled that it would not accept the agreement because, in light of the facts of the case, it was not "conscionable," *id.* at 20, and not in the public interest. *Id.* at 28.

Spaulding filed a motion to reconsider the rejection of the agreement.  ROA I at 87.  In denying the requested relief, the court reiterated its belief that the agreement was a "hybrid."  *Id*. at 173.  It then explained that the second plea agreement did not adequately reflect Spaulding's admitted conduct or his criminal history.  *Id*. at 175-76.

### D.    The parties try again, to no avail.

In a third plea agreement, Spaulding agreed to enter a conditional guilty plea to the original distribution count.  Relying on Fed. R. Crim. P. 11(a)(2), he reserved the right to appeal the district court's rejection of the second plea agreement.  ROA IV at 44-45.

During a hearing on the agreement, the court announced that it would not accept a conditional plea.  *Id*. at 34.  The court stated its belief that permitting a conditional plea would suggest that it encouraged plea agreements, which it did not.  *Id*. at 34.  The court further explained that a conditional plea would also suggest, to the Tenth Circuit, that it had doubts about its rejection of the second agreement.  *Id*. at 39.

The government and Spaulding reminded the district court that it had, in other cases, rejected plea agreements that included appeal waivers, noting that the present agreement was actually preserving Spaulding's appellate rights. *Id*. at 39. The court was unpersuaded, further stating: "I have never and I'm not about to start taking pleas where people reserve and say they didn't admit their guilt." *Id*. at 45-46.

The parties insisted that Spaulding did not claim innocence in this matter, but rather, wanted to appeal the court's rejection of the second agreement so that the Tenth Circuit would have an opportunity to elaborate on its holdings in *United States v. Carrigan* and *United States v. Robertson*. *Id*. at 44-46. Ultimately, the court refused to accept the conditional plea. *Id*. at 46-47.

> **E.  Spaulding admits his guilt during a bench trial and is sentenced to 137 months.**

Following the third failed attempt to enter into a plea agreement, a bench trial was scheduled. *See* ROA III at 60-109. As there had never been any dispute about Spaulding's conduct, the government and Spaulding submitted a stipulation of facts and testimony prior to the trial. ROA I at 181-88. The parties were informed, via email, that the

8

court would not accept the stipulations and, therefore, they should be prepared to call witnesses. *See* ROA III at 62-64. During the one-hour trial, Spaulding testified and admitted his guilt. *Id*. at 106-08. The district court found him guilty of the conspiracy and distribution counts. *Id*. at 108.

Prior to sentencing, the government filed for a downward adjustment and a downward departure. ROA I at 193, 196. In its § 5K1.1 motion, the government again recommended a sentencing range of 77 to 96 months. *Id*. at 196.

A second sentencing hearing was held, and following an extended discussion about the appropriate sentence, the court sentenced Spaulding to 137-months imprisonment. ROA III at 127-28.

## SUMMARY OF ARGUMENT

The second plea agreement — wherein Spaulding agreed to plead guilty to the telephone counts — would have resulted in a just sentence under the circumstances of this case. Nonetheless, it was within the district court's discretion to reject the plea agreement based upon its conclusion that the agreement did not adequately reflect Spaulding's conduct or criminal history.

Spaulding's sentence, however, is procedurally unreasonable. Although the district court granted the government's § 5K1.1 motion for a guideline departure, it did not determine what effect the motion had on the guideline range. And the court's reasoning is not discernable from the record. The court's failure to determine a final guideline sentence is contrary to Tenth Circuit precedent and is grounds for reversal.

**ARGUMENT**

**I.     The district court did not abuse its discretion when it rejected the second plea agreement.**

**A.     Preservation and Standard of Review**

The government and Spaulding entered into the second plea agreement, ROA I at 96, and filed a notice of disposition with the court. *Id*. at 84. The district court conducted a full hearing, ROA IV at 4-28, and rejected the plea agreement. *Id*. at 21, 24-28.

This Court reviews the rejection of a plea agreement for an abuse of discretion. *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995); *United States v. Carrigan*, 778 F.2d 1454, 1461-62 (10th Cir. 1985).

**B.    Although the government disagrees with the district court's decision to reject the second plea agreement, the record does not support a finding of abuse of discretion.**

Federal Rule of Criminal Procedure 11(c)(1) "contemplates different types of plea bargains." *Carrigan*, 778 F.2d at 1462. A charge bargain is one predicated on the dismissal of other charges. *Id.* A sentencing bargain entails the guarantee of a particular sentence or the recommendation of, or an agreement not to oppose, a particular sentence. *Id.* A hybrid agreement embraces elements of both charge bargains and sentencing bargains. *Robertson*, 45 F.3d at 1438.

A charge bargain implicates charging decisions, which are "primarily a matter of discretion for the prosecution, the representatives of the executive branch of government, who 'are not mere servants of the judiciary.'" *Id.* at 1437 (quoting *United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983)). Although charging decisions also implicate the sentencing discretion of the court, they do so only incidentally, and in the same manner as when a prosecutor decides to bring charges in the first place. *Id.* at 1438.

The government entered into the second plea agreement because, under the circumstances of the case, it believed that an eight-year

11

sentence was fair and just. ROA IV at 11-13. Spaulding played only a minor role in the drug transaction; he provided significant information in the investigation and prosecution of Blankenship and was willing to testify against him; he directed agents to other investigative leads; and he was forthright and honest in his interviews with law enforcement. *See* ROA I at 196-97; ROA III at 122-24; ROA IV at 7-14.

The government acknowledged Spaulding's extensive criminal record. ROA IV at 10. But the prosecutor explained that Spaulding is merely a nuisance "who engages in crime because of his drug use and to further his drug use." *Id*. at 11. Further, the longest sentence Spaulding had previously served was two years; therefore, an eight-year sentence would have been an appropriate step-up without being unnecessarily heavy. *Id*. at 11-12.

These remain the government's views. It agrees with Spaulding that the second plea agreement was a charge bargain rather than a hybrid, and it maintains that the agreement would have resulted in a fair and appropriate sentence. Contrary to Spaulding's view, however, the government recognizes that the district court "may reject charge

bargains in the sound exercise of judicial discretion." *Robertson*, 45 F.3d at 1438.

Rule 11 does not "explain how a district court should determine whether to accept a plea agreement." *In re Morgan*, 506 F.3d 705, 710 (9th Cir. 2007). This omission indicates that "[t]he drafters of the Rule intended for the judge to retain discretion in accepting plea bargains."[2] *United States v. Bean*, 564 F.2d 700, 702 (5th Cir. 1977). *Accord Robertson*, 45 F.3d 1423; *In re Morgan*, 506 F.3d at 710 n.2.

This Court has interpreted Rule 11(c)(3)(A) to mean that a district court may reject a plea agreement when it "believes that the bargain is too lenient, or is otherwise not in the public interest." *Carrigan*, 778 F.3d at 1462. Other circuits have reached the same conclusion. *See United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977); *United States*

---

[2] This discretion is not without limits. District courts have less discretion to reject a charge bargain, as opposed to a sentencing bargain, because it may be inappropriate for a district court to second guess prosecutorial charging decisions. *Accord Robertson*, 45 F.3d at 1428. *See also United States v. Ammimdown*, 497 F.2d 615, 623 (D.C. Cir. 1973) ("[D]ropping an offense that might be taken as an intrusion on the judicial function . . . takes on an entirely different coloration if it is explained to the judge that there was a prosecutorial purpose, an insufficiency of evidence, a doubt as to the admissibility of certain evidence under exclusionary rules, a need for evidence to bring another felon to justice, or other similar consideration.").

*v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005); *United States v. Miller*, 722 F.2d 562, 563 (9th Cir. 1983).

At the change of plea hearing, and in its order denying Spaulding's motion to reconsider, the district court held that Federal Rule of Criminal Procedure 11 allowed it to reject the plea agreement. *See* ROA I at 172-73; ROA IV at 20-21, 37-38. It also acknowledged its obligation, as set forth in *Robertson*, to explain both the prosecution's reasons for framing the bargain and its own justification for rejecting it. ROA I at 173 (citing *Robertson*, 45 F.3d at 1437-38).

The court explained its belief that the telephone counts, and the resulting sentence, did not adequately reflect Spaulding's relevant conduct or account for his criminal history. ROA I at 175; ROA IV at 20, 28. The court concluded that it was not in the public interest "to disregard a grand jury's finding of probable cause that two serious felonies had been committed and to substitute an Information alleging relatively benign charges . . . ." ROA I at 176. Ultimately, the court determined that the plea agreement was too lenient under the circumstances of the case. *See Id.* at 175-76.

14

The court supported its conclusion by citing to Spaulding's lengthy criminal record, his history of custody and community supervision problems, and his admission to conduct supporting the distribution count. *Id*. at 175-76. The court also justified its conclusion by drawing distinctions between Spaulding and his co-defendant Aldridge, who had received a lower sentence. *Id*. Although the government continues to disagree with the district court's assessment, the court's reasoning and justification for rejecting the second plea agreement fit squarely within this Court's precedent. *See Carrigan*, 778 F.2d at 1462. Therefore, the record does not support a finding of abuse of discretion.

## II.  The district court abused its discretion in imposing Spaulding's sentence.

### A.  The Issue on Appeal

The district court began the second sentencing hearing by granting the government's motion for an adjustment based on acceptance of responsibility and its § 5K1.1 motion for substantial assistance. ROA III at 112-13.

The court then noted that the starting Guideline range — for an offense level of 28 and a criminal history category VI — was 140 to 175 months. *Id*. at 113. The probation officer adjusted Spaulding's offense

level to 25 for acceptance of responsibility. *Id*. The resulting range was 110 to 137 months. *Id*. But, despite granting the government's § 5K1.1 motion, the court did not discuss the value of Spaulding's substantial assistance or what effect it had on the Guideline range. *Id*.

As the government understands his argument, Spaulding contends that the district court procedurally erred when it failed to determine the Guideline effect of the government's § 5K1.1 motion before varying from the Guidelines. *See* Opening Brief at 28. The government agrees with that contention and accordingly agrees that Spaulding's sentence should be reversed.

## B.    Preservation and Standard of Review

"Fairness and judicial efficiency demand that litigants notify the district court of a procedural sentencing error with reasonable specificity, thereby providing the court with the opportunity to correct its action in the first instance." *United States v. Robertson*, 568 F.3d 1203, 1209 (10th Cir. 2009). At various points during sentencing, the parties made observations that, when taken in combination, alerted the court to the fact that it had not identified the effect of the § 5K1.1 motion and gave the court the opportunity to correct its error. *See* ROA

16

III at 118 (statements by defense counsel noting that the court had not yet identified the value of Spaulding's substantial assistance); *id.* at 124-25 (the prosecutor offered to provide the court with more information about the government's § 5K1.1 motion); *id.* at 130 (after the court sentenced Spaulding to 137 months, the prosecutor expressed confusion about the effect of the § 5K1.1 motion on the Guideline range and asked whether the court had considered the motion).

Thus, the issue is preserved and should be reviewed under an abuse of discretion standard. *United States v. Smart*, 518 F.3d 800, 803, 805-06 (10th Cir. 2008). A district court abuses its discretion when the resulting sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008).

### C. Spaulding's sentence is procedurally unreasonable because the district court did not determine the effect of the § 5K1.1 motion prior to imposing a non-Guideline sentence.

Reasonableness in sentencing includes both a procedural component and a substantive component. *Huckins*, 529 F.3d at 1317. A sentence is procedurally unreasonable if, among other things, the

17

district court fails to calculate the Guideline sentence. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). Indeed, district courts "should begin all sentencing proceedings by correctly calculating the applicable guideline range." *Gall*, 552 U.S. at 49 (citing *Rita v. United States*, 551 U.S. 338 (2007)).

Further, this Court has, post-*Booker*, "steadfastly upheld [the] vitality [of the Guideline departure provisions] and [has] instructed district courts to continue to apply them in 'appropriate cases.'" *Robertson*, 568 F.3d at 1210. Thus, in order to calculate a Guideline sentence, a district court necessarily must determine what effect, if any, the relevant departure provisions have on the Guideline range. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1223 n.3 (10th Cir. 2008) ("[C]onsidering the Guidelines' departure provisions is part of the district court's obligation to calculate the appropriate Guidelines range, which is then considered in light of the § 3553(a) factors."); *United States v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008) ("One step in applying the Guidelines is to determine whether or not to depart from the range specified in the Sentencing Table."); *United States v. A.B.*, 529 F.3d 1275, 1286 (10th Cir. 2008) (explaining that this Court

has relied on cases from other circuits "that could be read to require district courts to consider available Guidelines departures as part of their initial consultation of the Guidelines") (emphasis omitted); *United States v. Calzada-Maravillas*, 443 F.3d 1301, 1305 (10th Cir.2006) (noting that consideration of the Guidelines "necessarily includes consideration of [the] departure provisions"). *See also United States v. McBride*, 434 F.3d 470, 477 (6th Cir.2006) ("Because Guideline 'departures' are a part of the appropriate Guideline range calculation, we believe that Guideline departures are still a relevant consideration for determining the appropriate Guideline sentence.").

Here, the district court began the second sentencing hearing by stating that it was "not going to follow the sentencing guidelines anyway." ROA III at 112. Simply stating this, however, did not obviate the court's duty to first calculate the Guideline range. *United States v. Corber*, 596 F.3d 763, 767 (10th Cir. 2010) (Only after the court properly calculates the applicable range may the court then determine the propriety and extent of a departure or variance. A failure to first calculate the applicable guideline range is grounds for resentencing.). Because the court granted the government's § 5K1.1 motion, it should

have identified the value of Spaulding's assistance *before* imposing —
and then justifying — a non-Guideline sentence.   *Alapizco-Valenzuela*,
546 F.3d at 1223 n.3.  The district court's failure to do so flies directly in
the face of this Court's precedent.  *Corber*, 596 F.3d at 767.

Further, because the district court did not discuss the value of
Spaulding's substantial assistance, it is impossible to determine
whether the court gave substantial weight — or any weight at all — to
the government's evaluation of Spaulding's assistance.  Although a
sentencing judge has wide latitude in evaluating a § 5K1.1 motion,
*United States v. Ollson*, 413 F.3d 1119, 1121 (10th Cir. 2005), the
Guidelines nonetheless direct district courts to "give substantial weight
. . . to the government's evaluation of the extent of the defendant's
assistance."  U.S.S.G. § 5K1.1 cmt. n.3.  *See also United States v. Doe*,
398 F.3d 1254, 1260 (10th Cir. 2005) (noting that a defendant's
assistance to the government is also relevant to the factors delineated
in 18 U.S.C. §3553(a)(2)); *United States v. Ressam*, 679 F.3d 1069, 1092
(9th Cir. 2012).  The total absence of discussion by the district court
thwarts any meaningful review of the matter.

The record as a whole is of little use in trying to discern the effect of the government's § 5K1.1 motion on the Guideline range:

- The district court did not calculate a Guideline range or discuss the effect of the § 5K1.1 motion at the first sentencing hearing. *See* ROA III at 38-52.  When questioned about the value of the § 5K1.1 motion, the court responded, "I accepted [the government's] motion but I'm not following [the government's] recommendation," and offered no further clarification.  *Id*. at 52.

- At the second sentencing hearing, the district court stated that it had "reject[ed] the government's analysis of [the] case in its entirety."  *Id*. at 127.  Therefore, it cannot be assumed that the court simply adopted the government's recommended range of 77 to 96 months.

- The final written judgment is silent as to the effect of the government's § 5K1.1 motion.  *See* ROA I at 216.

The government recognizes that the Guidelines are advisory and that the district court may choose to impose a non-Guideline sentence, provided it sufficiently explains the chosen variance.  *Smart*, 518 F.3d at 807; *Huckins*, 529 F.3d 1317.  Fundamental to this, however, is that

the court will first calculate the Guideline sentence from which it intends to vary. *Corber*, 596 F.3d at 767. Only then can the parties, and the appellate court, understand how large the variance is and assess it for reasonableness.

Here, the court granted a Guideline departure and then gave no indication of what effect it had on the Guideline range. Without any explanation, the parties and this Court are left to speculate.

## CONCLUSION

Spaulding's sentence should be vacated and his case remanded for resentencing.

Respectfully Submitted,

John F. Walsh
United States Attorney

/s/ *Stephanie N. Gaddy*
STEPHANIE N. GADDY
Special Assistant U.S. Attorney
1225 17th Street, Suite 700
Denver, Colorado  80202
(303) 454-0100
Attorneys for the Appellee

Email: USACO.ECFAppellate@usdoj.gov;
Stephanie.Gaddy@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


s/ *Dorothy Burwell*
Dorothy Burwell
U.S. Attorney's Office


23

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

    (1)    all required privacy redactions have been made;

    (2)    if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (3)    the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TREND MICRO Office Scan for Windows, Version 10.6.5372, Engine Version 9.750.1007, Virus Pattern File 10.729.00, dated 4/15/14 and according to the program are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

s/ *Dorothy Burwell*
Dorothy Burwell
U.S. Attorney's Office
